

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| MERCEDES OCHOA-BUNSOW, | § | 08-17-00238-CV |
| Appellant, | § | Appeal from the County Court |
| v. | § | at Law Number Six |
| ALFONSO SOTO and SOTO LAW FIRM, P.C., | § | of El Paso County, Texas |
| | § | |
| Appellees. | | (TC# 2016DCV0240) |
| | § | |

**O P I N I O N**

This is an appeal from a summary judgment ordering that Appellant Mercedes Ochoa-Bunsow ("Ochoa") take nothing on her claims against Appellees Alfonso Soto and Soto Law Firm, P.C. (collectively, "Soto"). Ochoa sued Soto for negligence, gross negligence, breach of fiduciary duty, and violations of the Texas Deceptive Trade Practices Act. Her claims arise from Soto's representation of her in a tax dispute with the Internal Revenue Service ("IRS") in the United States Tax Court ("Tax Court"). The trial court sustained Soto's objections to the summary judgment affidavit of Ochoa's expert and granted Soto's motion for summary judgment on the ground that there is no evidence of causation. We affirm.

**BACKGROUND**

Ochoa engaged in a business assisting a Mexican company to purchase pipe in the United States to complete a construction contract in Mexico. The underlying tax dispute concerns whether money she received in the course of that business is correctly classified as income taxable to her, or whether she merely acted as a conduit for that money so that it is not taxable to her.[1] Ochoa received a notice of deficiency from the IRS for the years 2006, 2007, and 2008. The alleged deficiency totaled $168,719 (plus interest and penalties), $121,065 of which was allocated to the year 2006. Ochoa hired Soto to represent her in the IRS audit and, if necessary, before the Tax Court.

In 2013, Soto filed suit against the IRS, contesting the tax deficiency. On the day of trial, Soto and the IRS entered a "Stipulation of Settled Issues" containing thirty-nine stipulations. The first of those stipulations concerns the deficiency for 2006. It states, "The total amount of the gross receipts of [Ochoa's] Schedule C activity known as International L&P is $477,121.00. This amount is $337,315.00 greater than the amount [Ochoa] reported on the Schedule C that was attached to her income tax return." We will refer to this stipulation, which is at the heart of Ochoa's lawsuit, as "Stipulation One."

The stipulations, as a whole, settled Ochoa's tax liability for all three disputed years and reduced her overall tax deficiency from the original $168,719 to $49,651.[2] Concerning 2006, the stipulations reduced Ochoa's tax deficiency from the original $121,065 to $74,551.

---

[1] At various times in the litigation, Ochoa has taken the position that she received the disputed funds as a loan, as an advance to pay for product, and as a conduit. Determining the correct classification of the funds is not necessary to our analysis and we offer no opinion on that matter.

[2] This figure is derived from viewing the stipulations and the ensuing Tax Court order as a whole. Ochoa owed a $74,551 deficiency for 2006 and a $6,993 deficiency for 2008. But she was credited with overpayments of $25,133 for 2007 and $6,760 for 2008. $74,551 + $6,993 - $25,133 - $6,760 = $49,651.

2

Ochoa alleges that Soto entered the stipulations without her knowledge or consent. When she learned of the stipulations, and particularly Stipulation One, she hired attorney David Leeper to attempt to "undo" it. These efforts reached all the way to the Fifth Circuit Court of Appeals, but were denied at every stage. Ochoa then brought this lawsuit against Soto seeking to recoup the additional taxes, interest, and penalties for which she was liable for the year 2006, as well as punitive damages, fee forfeiture, damages for mental anguish, and attorney's fees.

Soto filed a motion for traditional and no-evidence summary judgment asserting, among other grounds, that there is no evidence of causation. Ochoa responded with an affidavit from Leeper, as well as excerpts from Leeper's deposition. She also filed as summary judgment evidence declarations by herself and a certified public accountant, as well as deposition excerpts from two additional certified public accountants. Soto moved to strike Leeper's affidavit on the grounds that it is a "sham affidavit" and that the opinions expressed in the affidavit are not admissible under Rule 702 of the Texas Rules of Evidence, which governs expert testimony. Soto specifically asserted that Leeper's opinions concerning causation were speculative and, thus, unreliable.

The trial court signed an order sustaining Soto's objections to Leeper's affidavit "in their entirety" and granting the motion to strike. The court subsequently signed a summary judgment ordering that Ochoa take nothing on her claims against Soto. It later signed an amended summary judgment adding a provision awarding costs to Soto.

## ISSUES

In four issues, Ochoa contends that the trial court: (1) abused its discretion by striking the Leeper affidavit based on the sham affidavit doctrine; (2) erred by granting summary judgment because there is other evidence of causation; (3) erred by granting summary judgment on her

3

claims for fee forfeiture and mental anguish damages because those claims do not depend on Leeper's opinions; and (4) abused its discretion by awarding unsupported costs to Soto.

## STANDARDS OF REVIEW

A trial court's decision to exclude summary judgment evidence is reviewed for abuse of discretion. *Lujan v. Navistar, Inc*., 555 S.W.3d 79, 85 (Tex. 2018). "A trial court abuses its discretion if it acts in an arbitrary or unreasonable manner without reference to any guiding rules or principles." *Crawford v. XTO Energy, Inc*., 509 S.W.3d 906, 911 (Tex. 2017)(quoting *Bowie Mem'l Hosp. v. Wright*, 79 S.W.3d 48, 52 (Tex. 2002)).

The granting of a motion for summary judgment is reviewed *de novo*. *Lujan*, 555 S.W.3d at 84; *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). "Summary judgment is appropriate when there is no genuine issue as to any material fact and judgment should be granted in favor of the movant as a matter of law." *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005). In the context of a traditional summary judgment, the burden is on the movant to establish his entitlement to judgment as a matter of law. TEX.R.CIV.P. 166a(c). In the context of a no-evidence summary judgment, however, the burden is on the nonmovant to produce evidence raising a genuine issue of material fact as to the challenged elements. *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 220 (Tex. 2017).

A genuine issue of material fact exists if the evidence "rises to a level that would enable reasonable and fair-minded people to differ in their conclusions." *Id.*, (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). The reviewing court views the evidence in the light most favorable to the nonmovant and indulges every reasonable inference in the nonmovant's favor. *Shell Oil Co. v. Writt*, 464 S.W.3d 650, 654 (Tex. 2015). Even so, "[E]vidence does not create an issue of material fact if it is 'so weak as to do no more than create

a mere surmise or suspicion' that the fact exists." *Parker*, 514 S.W.3d at 220, (quoting *Kia Motors Corp. v. Ruiz*, 432 S.W.3d 865, 875 (Tex. 2014).

## DISCUSSION

*Striking the Leeper affidavit*

In her first issue on appeal, Ochoa contends that the trial court abused its discretion by striking the Leeper affidavit based on the sham affidavit doctrine. Under that doctrine, "a trial court may conclude that a party does not raise a genuine fact issue by submitting sworn testimony that materially conflicts with the same witness's prior sworn testimony, unless there is a sufficient explanation for the conflict." *Lujan*, 555 S.W.3d at 87. Soto invoked that doctrine in this case by objecting that Leeper's affidavit materially conflicts with his prior deposition testimony and that there is no explanation for the conflict.

Ochoa argues that the sham affidavit doctrine conflicts with Texas law and should be abolished. But after Ochoa filed her opening brief, the Texas Supreme Court considered and rejected this very argument. *See Lujan*, 555 S.W.3d at 86 ("recognizing the sham affidavit rule as a valid application of a trial court's authority to distinguish genuine fact issues from non-genuine fact issues under Rule 166a"). The sham affidavit doctrine is therefore a viable part of Texas law and the trial court did not abuse its discretion by considering it.

Ochoa next asserts that the trial court abused its discretion by striking Leeper's affidavit based on the sham affidavit doctrine because the affidavit does not materially conflict with Leeper's prior deposition testimony. We need not decide this issue, however, because the trial court's order striking Leeper's affidavit is based on multiple grounds, not all of which are challenged on appeal.

"When an appellee urges several objections to challenged evidence and on appeal, the

5

appellant complains of its exclusion on only one of those bases, the appellant waives any error by not challenging all possible grounds for the trial court's ruling that sustained the objection." *Trahan v. Lone Star Title Co. of El Paso*, 247 S.W.3d 269, 284 (Tex.App.—El Paso 2007, pet. denied). Soto objected to the Leeper affidavit on two grounds:  (1) it is a sham affidavit; and (2) the opinions it contains are not admissible under Rule 702 of the Texas Rules of Evidence because they are irrelevant and unreliable.  Ochoa argues that she did not waive error by challenging only the sham affidavit ground because the trial court's comments at the summary judgment hearing indicate that it granted Soto's objection only on that ground.  But we are guided by the court's written order, which unequivocally states that Soto's objections are granted in their entirety.

Ochoa next argues that the language of the summary judgment order shows that the trial court excluded the Leeper affidavit based only on the sham affidavit objection.  The order recites,

> Having SUSTAINED Defendants' Objections To and Motion to Strike Affidavit of David Leeper, the Court concluded that Plaintiff presented no evidence of causation and therefore the Court found that Defendants' Motion for Traditional and No-Evidence Summary Judgment should be GRANTED.

Ochoa notes that Soto moved to strike Leeper's affidavit under Rule 702 based on his use of the wrong standard of care and his lack of methodology concerning damages.  She then argues that, if the trial court had truly granted all of Soto's objections, the order would have contained recitations concerning breach and damages in addition to the recitation concerning causation. Ochoa overlooks the fact that Soto's Rule 702 objections included an objection that Leeper's opinions on causation were based on speculation and were, therefore, unreliable.  Thus, the court's reference in the summary judgment order to a lack of evidence of causation does not necessarily mean that it struck the Leeper affidavit based only on the sham affidavit doctrine.

Because the trial court granted Soto's objections to the Leeper affidavit based both on the sham affidavit doctrine and Rule 702, it was Ochoa's obligation to challenge both grounds on

appeal. *See Trahan*, 247 S.W.3d at 284. She did not, however, challenge the exclusion of the Leeper affidavit based on Rule 702.[3] As a result, she has waived any error concerning that exclusion. *See id.* Ochoa's first issue is overruled.

*Other evidence of causation*

In her second issue, Ochoa contends that, even if the trial court properly excluded the Leeper affidavit, it erred by granting summary judgment because Ochoa presented other evidence that Soto's conduct caused her economic damages.

An essential element of a legal malpractice claim is that the defendant lawyer's "negligence was the proximate cause of cognizable damage." *Rogers v. Zanetti*, 518 S.W.3d 394, 402 (Tex. 2017); *see Haddy v. Caldwell*, 403 S.W.3d 544, 546 (Tex.App.—El Paso 2013, pet. denied). Proximate cause, in turn, consists of cause in fact and foreseeability. *Rogers*, 518 S.W.3d at 402. "Whether a negligent lawyer's conduct is the cause in fact of the client's claimed injury requires an examination of the hypothetical alternative: What should have happened if the lawyer had not been negligent?" *Rogers*, 518 S.W.3d at 411. In some legal malpractice cases, the client's testimony may provide the causal link. *Alexander v. Turtur & Assocs., Inc.*, 146 S.W.3d 113, 119 (Tex. 2004). But "when the causal link is beyond the jury's common understanding, expert testimony is necessary." *Id.* at 119-20. This is generally the case when the assertion of attorney negligence arises in the context of prior litigation.

> If the malpractice action arises from prior litigation, the plaintiff bears the additional burden of proving that, 'but for' the attorney's breach of duty, the plaintiff would have prevailed on the underlying cause of action and would have been entitled to judgment. To discharge this burden, known as the 'suit within a suit' requirement, the plaintiff must produce evidence explaining the legal

---

[3] Ochoa attempts to assert error in the Rule 702 ruling for the first time in her reply brief. "A reply brief may not be utilized as a vehicle to present a new issue to the court." *Calvillo v. Carrington Mortg. Servs.*, 487 S.W.3d 626, 630 n.2 (Tex.App.—El Paso 2015, pet. denied)(citing *Fox v. City of El Paso*, 292 S.W.3d 247, 249 (Tex.App.—El Paso 2009, pet. denied)). We decline to address Ochoa's new arguments concerning Rule 702.

significance of the attorney's failure and the impact this had on the underlying action. The plaintiff will not be successful in discharging this burden if he fails to produce expert testimony regarding causation and the standard of skill and care ordinarily exercised by an attorney. [Citations omitted].

*Haddy*, 403 S.W.3d at 546.

Because Ochoa's assertion of attorney negligence arises in the context of prior litigation, it was her burden to present evidence raising a genuine issue of material fact that she would have obtained a more favorable judgment from the Tax Court but for Soto's alleged negligence. *See Rogers*, 518 S.W.3d at 404-405; *Haddy*, 403 S.W.3d at 546. Applying this principle to Ochoa's specific allegations, her burden was to present evidence that, if Soto had not agreed to Stipulation One, the Tax Court would not have held her liable for the additional taxes and penalties. But the causal link between Soto's conduct and the Tax Court's ultimate judgment is beyond the jury's common understanding. *See Alexander*, 146 S.W.3d at 119-20. For this reason, Ochoa was required to present expert testimony to sustain her burden of raising a genuine issue of fact on causation. *See Alexander*, 146 S.W.3d at 119-20; *Rogers*, 518 S.W.3d at 404-405; *Haddy*, 403 S.W.3d at 546.

Ochoa points to testimony from three certified public accountants that the disputed funds should not be classified as income taxable to her. She argues that this evidence is sufficient to raise a fact issue on causation because a jury could reasonably conclude that entering Stipulation One, which she alleges improperly characterized the funds as income, proximately caused her damages in the amount of the additional tax liability and penalties. This is a vast oversimplification of the tax deficiency issue and wholly ignores the effect of other related stipulations concerning deductions that were allowed for the same tax year.

Further, while the testimony of these accountants may be some evidence supporting Ochoa's position in her litigation with the IRS, it does not constitute any evidence that, if Soto had

8

not entered Stipulation One, the Tax Court would have accepted Ochoa's position and rendered a verdict more favorable to her. The accountants did not, nor could they, opine on the relevant causation issue—whether Ochoa would have received a more favorable outcome in the Tax Court had Soto not signed Stipulation One. That issue requires expert *legal* testimony.

Ochoa cites *Allbritton v. Gillespie, Rozen, Tanner & Watsky, P.C.*, 180 S.W.3d 889, 894 (Tex.App.—Dallas 2005, pet. denied), for the proposition that causation in a legal malpractice case may be established through non-legal experts such as accountants. *Allbritton* does not support that proposition. Rather, it recognizes that the testimony of a non-legal expert may sometimes be necessary or appropriate to *supplement* the testimony of a legal expert to establish causation. *Id.* at 894. In fact, the *Allbritton* court held that the testimony of the legal expert in that case was, alone, sufficient to raise a fact issue on causation. *Id.* It in no way indicated that the testimony of a non-legal expert, alone, could be sufficient. *See id.*

The only expert legal testimony Ochoa presented concerning the issue of causation was from the deposition of attorney Leeper. But those deposition excerpts are riddled with speculation—a characterization expressly employed by Leeper himself:

- When asked what would have happened if he had been successful in setting aside Stipulation One, Leeper responded, 'what I speculate would have happened would have been that we would have gone back . . . and come to an agreement on the case all over again.'

- When asked, 'You would have advocated that it was a loan or an advance or somehow not taxable, but how that would have shaken out we would have to just speculate?' Leeper agreed, 'yeah, it would be speculation.'

- When asked whether he would have characterized the funds as a loan or an advance, Leeper responded, 'Just speculating, I would lean more towards an advance.'[4]

- When asked whether Soto's actions proximately caused Ochoa any damage, Leeper acknowledged that, but for Stipulation One, Ochoa would have had to go to trial and

---

[4] We note that this testimony is of limited value, even if it were not speculative, because characterizing the funds as an advance does not comport with Ochoa's current "conduit" theory.

9

expend a lot more time, money, and effort, 'but the result *may* have been very different.' [Emphasis added.].

• Leeper testified that, if he had had the case from the start, his 'speculation . . . based on [his] present knowledge and experience' was that he would have prevailed on the Stipulation One issue.

Leeper repeatedly demonstrated that his testimony is based on speculation concerning what may have occurred in the Tax Court if either Soto had not entered Stipulation One or if that stipulation had been rescinded. Expert opinions that are conclusory or speculative lack probative value and constitute no evidence, even if they are not objected to. *Coastal Transp. Co., Inc. v. Crown Cent. Petro. Corp*., 136 S.W.3d 227, 232-33 (Tex. 2004). Leeper's testimony, as cited above, is no evidence of causation because it is speculative on its face.

In one instance, Leeper opined that, in reasonable legal probability, he would have "won" the case if what Ochoa said was true and if the documents supported her position. Testimony that he would have "won" the case is conclusory and constitutes no evidence. *See id.* at 232. In addition, the qualifications "if what Ochoa said was true" and "if the documents supported her position" render the opinion speculative. As just discussed, speculative opinions constitute no evidence. *Id.*

Leeper's deposition testimony is no evidence that Ochoa would have obtained a more favorable outcome in the Tax Court for the additional reason that Leeper admittedly considered only Stipulation One, not the other thirty-eight stipulations presented to the Tax Court. He did not know the basis for those other stipulations, nor did he know the reason the IRS stipulated to some deductions and not others. And when asked about Soto's position that deductions provided for in other stipulations offset the effect of classifying the disputed funds as income in Stipulation One, Leeper stated, "I would like to hear his explanation, but my impression of what he said is that's

probably not right." Because he focused only on Stipulation One, Leeper lacked the factual basis to opine on the totality of the stipulations presented to the Tax Court.

Even if Leeper's testimony that he would have prevailed on the Stipulation One issue were not speculative or conclusory, that testimony does not constitute any evidence that Ochoa would have obtained a more favorable verdict from the Tax Court. The issue before that court was Ochoa's ultimate tax liability, which requires consideration not only of her income, but the deductions to which she was entitled. Prevailing on the characterization of the disputed funds does not equate to prevailing on Ochoa's tax dispute with the IRS. Ochoa's burden was to raise a fact issue on the suit-within-a-suit requirement, not an issue-within-a-suit.

Rather than raising a fact issue on the suit-within-a-suit requirement, Leeper's testimony actually confirms Ochoa's failure to raise a fact issue. Ochoa alleges that Soto's negligence in entering Stipulation One caused her to owe additional tax liability and penalties. Her burden, then, was to present expert evidence that, in the absence of that stipulation, the Tax Court would not have found her liable for the additional tax and penalties. *See Rogers*, 518 S.W.3d at 404-405; *Haddy*, 403 S.W.3d at 546. But her own legal expert, the only legal expert who testified on the subject, essentially conceded that the outcome in the Tax Court might well have been the same, regardless of Stipulation One. When asked whether he agreed that Soto caused a liability to Ochoa of $109,797, he responded,

> I don't think that Soto caused the liability. I think that's an unfair prescription. I think his signing that stipulation generated that kind of liability. *She may have owed it or may not have owed it.* But saying that he caused it, that's too strong a word. His signing that stipulation caused this. [Emphasis added].

Leeper recognized a distinction between how the dispute between Ochoa and the IRS was resolved by agreement and how that dispute would have been resolved had it gone to trial. As to the former, Leeper agreed that Soto signing Stipulation One caused the case to be resolved by

11

agreement, which resulted in the tax liability assessed by the Tax Court. But by testifying that Ochoa may actually owe that liability, Leeper acknowledged that the outcome in the Tax Court, had the case proceeded to trial, may well have been the same. His testimony certainly provides no evidence that the Tax Court would have rendered a verdict more favorable to Ochoa.

Finally, Ochoa argues that she presented evidence that signing Stipulation One caused her to incur expenses including attorney's fees paid to Soto to contest the tax deficiency and fees paid to Leeper and various accountants in an effort to "undo" Stipulation One. But these are merely other forms of economic damages asserted as a remedy for legal malpractice. *See Akin, Gump, Strauss, Hauer & Feld, L.L.P. v. Nat'l Dev. & Research Cor*p., 299 S.W.3d 106, 122 (Tex. 2009)(legal malpractice plaintiff may recover attorney's fees as damages if proximately caused by attorney negligence); *Edwards v. Dunlop-Gates*, 344 S.W.3d 424, 433 (Tex.App.—El Paso 2011, pet. denied)(same). As such, they, too, are subject to the requirement that Ochoa present expert legal testimony showing that she would have obtained a more favorable result in the Tax Court had Soto not signed Stipulation One. *See Hoover v. Larkin*, 196 S.W.3d 227, 232 (Tex.App.— Houston [1st Dist.] 2006, pet. denied)(applying suit-within-a-suit requirement to claim for attorney's fees as damages in legal malpractice case). There is no evidence in the record fulfilling that requirement.

The summary judgment evidence remaining after the exclusion of the Leeper affidavit does not raise a genuine issue of material fact on causation. The trial court did not err by granting summary judgment based on a lack of evidence of causation. Ochoa's second issue is overruled.

*Fee forfeiture*

In her third issue on appeal, Ochoa maintains that the trial court erred by ordering a take-nothing judgment on her claim for fee forfeiture because that claim does not require proof of

causation. Soto responds that Ochoa did not preserve this issue for review because she did not raise it in her summary judgment response. We disagree.

Soto moved for summary judgment on the ground that there is no evidence of causation. But Ochoa had the burden to present evidence of causation, *i.e.*, to raise a fact issue on causation, only to the extent that causation is an element of her claims. This is implicit in the no-evidence summary judgment rule itself:

> [A] party without presenting summary judgment evidence may move for summary judgment on the ground that there is *no evidence of one or more essential elements* of a claim or defense on which an adverse party would have the burden of proof at trial. The motion must state *the elements* as to which there is no evidence. [Emphasis added].

TEX. R. CIV. P. 166a(i). A party may not move for no-evidence summary judgment on the ground that there is no evidence of something that the adverse party has no burden to prove. *See id.*

We conclude that Ochoa was not required to assert in her summary judgment response that causation is not an essential element of her claim for fee forfeiture. In fact, we note that Soto's summary judgment motion does not assert that it is. Rather, Soto moved for summary judgment on the ground that there is no evidence that "any action by the Defendants was the proximate or producing cause of any *damages* to Plaintiff." [Emphasis added]. Ochoa's complaint that the trial court erred by granting summary judgment on her claim for fee forfeiture is properly before us.

As remedies for breach of fiduciary duty, Ochoa pleaded both for damages and fee forfeiture. To defeat Soto's no-evidence summary judgment motion on her claim for actual damages, Ochoa was required to produce evidence of a causal relationship between Soto's actions and those damages. *See First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 221 (Tex. 2017). But the Texas Supreme Court has held that a plaintiff is "not required to show causation and actual damages as to any equitable remedies." *Parker*, 514 S.W.3d at 221. Fee forfeiture is an equitable remedy. *Burrow v. Arce*, 997 S.W.2d 229, 234 (Tex. 1999). Thus, Ochoa

13

was not required to produce evidence of causation to support her claim for fee forfeiture. *See Parker*, 514 S.W.3d at 221.

The trial court erred by granting summary judgment denying Ochoa's claim for fee forfeiture based on a lack of evidence of causation. Soto urges, though, that this Court exercise its discretion to affirm the summary judgment on other grounds presented to, but not ruled on by, the trial court. *See Cincinnati Life Ins. Co. v. Cates*, 927 S.W.2d 623, 626 (Tex. 1996)("appellate court may consider other grounds that the movant preserved for review and trial court did not rule on in the interest of judicial economy").

Soto identifies as an additional ground supporting affirmance of the summary judgment on Ochoa's fee forfeiture claim the assertion that Ochoa's breach of fiduciary duty cause of action is improperly "fractured" from her legal malpractice cause of action. Soto properly raised this ground in his summary judgment motion. As this issue may be resolved by examining Ochoa's pleadings, we agree that judicial economy would be served by addressing it. *See Cates*, 927 S.W.2d at 626.

"The rule against dividing or fracturing a negligence claim prevents legal-malpractice plaintiffs from opportunistically transforming a claim that sounds only in negligence into other claims." *Saldana-Fountain v. Chavez Law Firm*, 450 S.W.3d 913, 918 (Tex.App.—El Paso 2014, no pet.)(quoting *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 189 (Tex.App.—Houston [14th Dist.] 2002, no pet.)). The court looks to the substance of the claims to determine "whether a plaintiff has presented a separate claim, or merely recast and repeated a negligence claim." *Id.*; *see Border Demolition & Environmental, Inc. v. Pineda*, 535 S.W.3d 140, 159 (Tex.App.—El Paso 2017, no pet.).

Ochoa alleges that Soto was negligent by failing to (1) diligently represent her, (2) preserve her claims, rights and defenses, (3) protect her interests, (4) obtain her consent to enter Stipulation One, (5) notify her of Stipulation One, and (6) prepare her case for trial. She alleges that Soto breached his fiduciary duty to her "by agreeing to the stipulation without [her] knowledge and consent because [he was] unprepared to try [her] underlying case."

Ochoa's pleadings demonstrate that her claim for breach of fiduciary duty is based on the same conduct as is her claim for attorney negligence. She has merely recast and repeated her negligence claim as a breach of fiduciary duty claim; the substance of the claims is indistinguishable. *See Saldana-Fountain*, 450 S.W.3d at 918.

> This Court upheld a summary judgment in *Border Demolition* on similar facts.
>
> Border Demolition made virtually identical factual allegations in support of both its legal malpractice claim and its claim for breach of fiduciary duty. Both claims allege that Pineda failed to timely answer the Reza lawsuit and otherwise defend and protect Border Demolition's interests. Although these allegations support a claim for legal malpractice, they do not additionally support a distinct claim for breach of fiduciary duty. Thus, we find that bringing these allegations as separate claims constitutes impermissible fracturing.

*Border Demolition*, 535 S.W.3d at 160-61.

The Court noted that Border Demolition failed to allege in its petition that Pineda engaged in any self-dealing or improperly benefitted from his actions or inactions. *Id.* at 160. Ochoa alleges that Soto committed the alleged breaches "to place [his] own interests ahead of Plaintiff and in an effort to conceal [his] malpractice which would have come to light had [he] proceeded to try Plaintiff's case unprepared." But this is merely a restatement of her allegations that Soto failed to prepare for trial and failed to inform her of Stipulation One. It is not an allegation of self-dealing or improper benefit as would support a breach of fiduciary duty claim separately from a legal malpractice claim. *See id.*

15

As in *Border Demolition*, Ochoa's assertion of a separate claim for breach of fiduciary duty constitutes impermissible fracturing. *See id.* Soto was entitled to a summary judgment denying Ochoa's breach of fiduciary duty claim on this ground. Because Ochoa sought fee forfeiture as a remedy for breach of fiduciary duty, granting summary judgment based on impermissible fracturing results in a take-nothing judgment on Ochoa's claim for fee forfeiture as well as her claim for damages. For this reason, the trial court's error in granting summary judgment on fee forfeiture based on a lack of causation evidence does not require reversal of the take-nothing summary judgment. *See* TEX.R.APP.P. 44.1 (error not reversible unless it probably caused rendition of improper judgment); *Cates*, 927 S.W.2d at 626 (appellate court may affirm summary judgment on grounds not considered by trial court).

*Mental anguish damages*

Also in her third issue, Ochoa contends that the trial court erred by ordering a take-nothing judgment on her claim for mental anguish damages because that claim does not depend on Leeper's excluded opinions on causation.

Ochoa sought mental anguish damages as a remedy for Soto's alleged gross negligence, breach of fiduciary duty,[5] and violations of the DTPA. Each of these claims requires proof of causation. "To prevail on a claim under the DTPA, a plaintiff must prove that a violation of the statute was a producing cause of the injury." *Alexander*, 146 S.W.3d at 117, (citing TEX.BUS.&COM.CODE § 17.50(a)). "To prevail on a breach of fiduciary duty claim, the plaintiff must prove that the defendant's breach of their fiduciary duties proximately caused the plaintiff's damages." *Finger v. Ray*, 326 S.W.3d 285, 291 (Tex.App.—Houston [1st Dist.] 2010, no pet.).

---

[5] As just discussed, we affirm the summary judgment ordering that Ochoa take nothing on her claim for breach of fiduciary duty on the ground of impermissible fracturing of a legal malpractice claim. Even so, we address the issue of mental anguish in the context of breach of fiduciary duty in the interest of completeness.

Proximate cause is also an element of a claim for gross negligence. *Gray v. Woodville Health Care Ctr.*, 225 S.W.3d 613, 617 (Tex.App.—El Paso 2006, pet. denied). While producing cause and proximate cause are different standards, both require proof of causation in fact. *Alexander*, 146 S.W.3d at 117.

Ochoa argues that, under *Latham v. Castillo*, 972 S.W.2d 66 (Tex. 1998), she does not have to prove that she suffered economic damages in order to recover mental anguish damages. *Id.* at 69. But while *Latham* does hold that a DTPA plaintiff need not prove economic damages to recover mental anguish damages, it does not dispense with the DTPA element of producing cause. On the contrary, the *Latham* court expressly stated that it is not enough to prove a DTPA violation; that violation "must have been the producing cause of actual damages." *Id.* Similarly, nothing in *Latham* dispenses with the requirement that a plaintiff asserting a claim for gross negligence or breach of fiduciary duty must prove that the defendant's conduct proximately caused plaintiff's damages. So, even setting aside the issue of economic damages, Ochoa was still required to prove a causal link between Soto's conduct and her mental anguish damages.

Ochoa again takes an overly narrow view of the trial court's summary judgment. The court recites that it sustained Soto's objections to Leeper's affidavit and concludes that there is no evidence of causation. Ochoa interprets this to mean that the trial court concluded only that there is no evidence that Soto's conduct caused Ochoa any economic damages. But that is not what the judgment says nor does the language of the judgment fairly support that inference. On the contrary, the judgment plainly states that it is based on a lack of evidence of causation, without qualification.

Ochoa contends that striking the Leeper affidavit, which addressed economic damages, was immaterial to her claim for mental anguish damages. She then argues that, for that reason alone, the summary judgment on mental anguish damages should be reversed. But the question is

17

not whether the excluded Leeper affidavit contained any evidence of causation relating to mental anguish damages. The question is whether there is any evidence in the record that was *not* excluded that shows such causation.

Ochoa contends that her own declaration, filed in support of her summary judgment response, supplies evidence of the necessary causal link between Soto's conduct and her alleged mental anguish. In that declaration, Ochoa states that she has suffered from severe mental anguish ever since she learned that Soto took advantage of her and that she continues to suffer mental anguish whenever she thinks about his breach of trust. She specifically links her mental anguish to the "dire financial position" and "financial ruin" which she contends Soto "placed her in."

While *Latham* holds generally that a plaintiff need not prove economic damages to recover actual damages for mental anguish, the specific circumstances of this case are such that this general rule does not apply. Ochoa's position is that Soto caused her financial ruin, *i.e.*, economic damages, which caused her mental anguish. Because Ochoa's own theory depends on the assertion that Soto caused her to suffer economic damages, she was required to present evidence of that causal link. We have held above that she did not sustain this burden. Because there is no evidence that Soto's conduct caused Ochoa to suffer economic damages, there is no evidence of a causal link between Soto's conduct and the mental anguish Ochoa asserts she suffered as a result of financial ruin.

Ochoa did not sustain her summary judgment burden to produce evidence demonstrating a causal link between Soto's conduct and her alleged mental anguish. The trial court did not err by granting a take-nothing summary judgment on Ochoa's claim for mental anguish damages as a remedy for gross negligence, breach of fiduciary duty, or violations of the DTPA. Ochoa's third issue is overruled.

18

*Award of costs*

The trial court's original summary judgment did not include an assessment of costs. Soto moved to modify the judgment to include such an assessment in his favor. The court then signed an amended summary judgment ordering that "Defendants be awarded their costs of court." Ochoa contends that the court erred by amending the judgment to award costs to Soto because Soto did not submit an itemized record of his costs before judgment was entered. Quoting *Varner v. Howe*, 860 S.W.2d 458 (Tex.App.—El Paso 1993, no writ), she argues that this Court has "made clear that a successful party must 'present to the trial judge and opposing counsel at some time before the judgment [a] signed [and] itemized list of costs and fees incurred during the lawsuit so that the judge can determine which costs and fees are properly includable in the judgment.'" *See id.* at 466. We disagree.

The issue presented in *Varner* was whether a general prayer for relief supports an award of court costs. The Court's comment concerning submitting a bill of costs prior to judgment is dictum. *See Seger v. Yorkshire Ins. Co., Ltd.*, 503 S.W.3d 388, 399 (Tex. 2016)(defining dictum as "[a]n opinion expressed by a court, but which, not being necessarily involved in the case, lacks the force of an adjudication"). In addition, far from making the matter "clear," this Court expressly noted that Section 31.007 of the Civil Practice and Remedies Code is "somewhat vague as to procedure" and that "[a]ll that *seems* to be required" is to present a bill of costs prior to judgment. [Emphasis added]. *Varner*, 860 S.W.2d at 466.

Finally, other courts have specifically rejected *Varner*'s dictum. For example, the First Court of Appeals has held that "[t]he rules do not require a successful party in a lawsuit to submit an accounting of her court costs to the trial court and opposing counsel before the entry of a judgment adjudicating costs." *Madison v. Williamson*, 241 S.W.3d 145, 158 (Tex.App.—Houston

19

[1st Dist.] 2007, pet. denied). Other courts have followed suit. *See Holliday v. Weaver*, No. 05-15-00490-CV, 2016 WL 3660261, at *4 (Tex.App.—Dallas July 7, 2016, no pet.)(mem. op.); *Sw. Pipe Servs., Inc. v. Kinder Morgan, Inc.*, No. 14-09-00601-CV, 2010 WL 2649950, at *7 (Tex.App.—Houston [14th Dist.] July 6, 2010, no pet.)(mem. op.); *Labor v. Warren*, 268 S.W.3d 273, 279 (Tex.App.—Amarillo 2008, no pet.); *see also Elkins v. State*, No. 03-98-00698-CV, 2000 WL 963160, at *5 n.4 (Tex.App.—Austin July 13, 2000, pet. denied).

The trial court's role in regard to costs of court is to adjudicate which party bears those costs, not to determine their amount. *Madison*, 241 S.W.3d at 158. Taxing costs is a ministerial duty of the court clerk. *See id.*; TEX.R.CIV.P. 622. And it is to the court clerk that the successful party must submit his bill of costs. *See Madison*, 241 S.W.3d at 158.

Ochoa next contends that the costs assessed against her include costs that are not properly taxable to her. But the proper method for correcting this type of error is to file a motion to retax costs. *See Campbell v. Wilder*, 487 S.W.3d 146, 152 (Tex. 2016)(motion to retax costs is "the proper method for correcting errors such as miscalculating the cost of an item or billing an item that is not statutorily taxable"); *Pitts v. Dallas Cty. Bail Bond Bd.*, 23 S.W.3d 407, 417 (Tex.App.—Amarillo 2000, pet. denied)("Correction of errors in specific items of costs is sought by a motion to retax costs."). Thus, filing a motion to retax costs is required to preserve for appeal any complaint that some costs were not properly taxable. *Wright v. Pino*, 163 S.W.3d 259, 261-62 (Tex.App.—Fort Worth 2005, no pet.).

Ochoa did not file a motion to retax costs. Her assertion that the costs awarded to Soto include costs that are not properly taxable to her is waived. *See Wright*, 163 S.W.3d at 262. Issue Four is overruled.

## CONCLUSION

Ochoa has not demonstrated that the trial court abused its discretion by excluding certain summary judgment evidence, or that it erred by granting Soto's motion for summary judgment. Ochoa's complaint concerning the assessment of costs against her is waived. Having overruled Appellant's issues, the amended summary judgment is affirmed.


August 16, 2019

YVONNE T. RODRIGUEZ, Justice

Before McClure, C.J., Rodriguez, and Palafox, JJ.